IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HENSON LANE | § § | CIVIL ACTION NO. 3:12-cv-00283 |
| | § § | |
| V. | § § | JURY DEMANDED |
| ENGINEERING & INSPECTIONS HAWAII, INC. AND HIGHMARK HEALTH INSURANCE COMPANY | § § § § | |

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

### Nature of the Case

1. Henson Lane paid for health insurance for the months of September 2010 and October 2010 to his employer, Defendant, Engineering & Inspections Hawaii, Inc. However, Defendant, Engineering & Inspections Hawaii, Inc. only paid the collected premium to the health insurance company for one month, not the two months for which it collected premiums.  This resulted in Mr. Lane receiving health insurance for only 30 days.  Mr. Lane's employer terminated the insurance days before Mr. Lane underwent a colonscopy.  As a result, Mr. Lane was left with thousands of dollars of unpaid medical bills.  In addition, the insurance was terminated without good cause and without 30 days notice as required by 45 CFR 147.128.

2. Defendant Engineering & Inspections Hawaii, Inc. has never refunded the health insurance premium.  Defendant, Engineering & Inspections Hawaii, converted Mr. Lane's hard earned wages for its own use when it kept his insurance premium.  This gives rise to a violation of the Fair Labor Standards Act.

3. Mr. Lane's health insurance while employed with Engineering & Inspections Hawaii,

Inc. was provided by Highmark Health Insurance Company.

## Jurisdiction and Venue

4. This court has subject matter jurisdiction under 29 USC § 1132(e)(1) and 29 U.S.C 216(b).

5. Venue in this District is proper under the ERISA statute 29 USC § 1132(e)(2) because the breach took place in Harris County, Texas.

## The Parties

6. Plaintiff is a resident of Galveston County, Texas.

7. Defendant, Engineering & Inspections Hawaii, Inc., is a foreign corporation conducting business in Texas. It has made an appearance in this lawsuit.

8. Defendant, Highmark Health Insurance Company, is a foreign corporation conducting business in Texas. It has made an appearance in this lawsuit.

## Factual Allegations

9. Mr. Lane received health insurance as an employee of Engineering & Inspections Hawaii, Inc. from September 1, 2010 to September 30, 2010. Mr. Lane and his wife had to wait three months to be eligible for health insurance. Engineering & Inspections Hawaii, Inc. began deducting health insurance premiums from Mr. Lane's paycheck one month earlier than the commencement of coverage. Mr. Lane scheduled a colonscopy to occur on October 2, 2010. The hospital and doctor's office received pre-certification from the Highmark Health Insurance Company for the procedure.

10. In the last week of September Mr. Lane learned that he was being laid off from

      Engineering & Inspections Hawaii, Inc. Mr. Lane, his doctor and the hospital had no reason to believe that Mr. Lane was not still covered since he was required to pay one month in advance for health insurance. For those reasons, Mr. Lane went forward with his colonscopy of October 2.

11. Months after the procedure Mr. Lane learned that Highmark Health Insurance Company rejected the claims. The doctor and hospital began demanding payment from Mr. Lane.

12. Mr. Lane's wife made numerous requests to Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company for information regarding how much Mr. Lane paid in health insurance premiums, why the health insurance was terminated on September 30 if they had to pay one month in advance and why COBRA was not offered. However, Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company never responded to her requests for answers and information.

13. Mr. Lane never received any information regarding the continuation of his health insurance benefits from the employer, a third party administrator or Highmark health insurance company so he did not have continuing health insurance coverage in place to cover the medical bills in light of the early and wrongful termination of the health insurance benefits.

14. Mr. Lane suffered damages for the wrongful termination of the health insurance benefits causing him to incur substantial medical bills, mental anguish, damage to credit rating because the medical bills were turned over to a collection agency, attorneys fees, and court costs.

**Claims for Relief**

Conversion

15. Defendant, Engineering & Inspections Hawaii, deducted money from Mr. Lane's wages for a health insurance premium payment. The health insurance premium payment was not sent to the health insurance company. As a result, Defendant, Engineering & Inspections Hawaii, converted a portion of Mr. Lane's wages to its own use rather than paying it to the health insurance company. Defendant, Engineering & Inspections Hawaii, caused Mr. Lane damages by converting his wages for its use.

Violation of 45 CFR 147.128

16. Defendant, Engineering & Inspections Hawaii, failed to comply with the prohibition against rescission of health insurance. Specifically, Defendant, Engineering & Inspections Hawaii, failed to rescinded Mr. Lane's health insurance without good cause and without 30 days written notice.

(a) Prohibition on rescissions—

(1) A group health plan, or a health insurance issuer offering group or individual health insurance coverage, must not rescind coverage under the plan, or under the policy, certificate, or contract of insurance, with respect to an individual (including a group to which the individual belongs or family coverage in which the individual is included) once the individual is covered under the plan or coverage, unless the individual (or a person seeking coverage on behalf of the individual) performs an act, practice, or omission that constitutes fraud, or unless the individual makes an intentional misrepresentation of material fact, as prohibited by the terms of the plan or coverage. A group health plan, or a health insurance issuer offering group or individual health insurance coverage, must provide at least 30 days advance written notice to each participant (in the individual market, primary subscriber) who would be affected before coverage may be rescinded under this paragraph (a)(1), regardless of, in the case of group coverage, whether the coverage is insured or self-insured, or whether the rescission applies to an entire group or only to an individual within the group. (The rules of this paragraph (a)(1) apply regardless of any contestability period that may

otherwise apply.)

(2) For purposes of this section, a rescission is a cancellation or discontinuance of coverage that has retroactive effect. For example, a cancellation that treats a policy as void from the time of the individual's or group's enrollment is a rescission. As another example, a cancellation that voids benefits paid up to a year before the cancellation is also a rescission for this purpose. A cancellation or discontinuance of coverage is not a rescission if—

(i) The cancellation or discontinuance of coverage has only a prospective effect; or

(ii) The cancellation or discontinuance of coverage is effective retroactively to the extent it is attributable to a failure to timely pay required premiums or contributions towards the cost of coverage.

(3) The rules of this paragraph (a) are illustrated by the following examples: Example 1. (i) Facts. Individual A seeks enrollment in an insured group health plan. The plan terms permit rescission of coverage with respect to an individual if the individual engages in fraud or makes an intentional misrepresentation of a material fact. The plan requires A to complete a questionnaire regarding A's prior medical history, which affects setting the group rate by the health insurance issuer. The questionnaire complies with the other requirements of this part and part 146 . The questionnaire includes the following question: "Is there anything else relevant to your health that we should know?" A inadvertently fails to list that A visited a psychologist on two occasions, six years previously. A is later diagnosed with breast cancer and seeks benefits under the plan. On or around the same time, the issuer receives information about A's visits to the psychologist, which was not disclosed in the questionnaire. (ii) Conclusion. In this Example 1, the plan cannot rescind A's coverage because A's failure to disclose the visits to the psychologist was inadvertent. Therefore, it was not fraudulent or an intentional misrepresentation of material fact.
Example 2. (i) Facts. An employer sponsors a group health plan that provides coverage for employees who work at least 30 hours per week. Individual B has coverage under the plan as a full-time employee. The employer reassigns B to a part-time position. Under the terms of the plan, B is no longer eligible for coverage. The plan mistakenly continues to provide health coverage, collecting premiums from B and paying claims submitted by B. After a routine audit, the plan discovers that B no longer works at least 30 hours per week. The plan rescinds B's coverage effective as of the date that B changed from a full-time employee to a part-time employee. (ii) Conclusion. In this Example 2, the plan cannot rescind B's coverage because

there was no fraud or an intentional misrepresentation of material fact. The plan may cancel coverage for B prospectively, subject to other applicable Federal and State laws.

(b) Compliance with other requirements. Other requirements of Federal or State law may apply in connection with a rescission of coverage.

(c) Applicability date. The provisions of this section apply for plan years (in the individual market, for policy years) beginning on or after September 23, 2010. See § 147.140 of this part for determining the application of this section to grandfathered health plans (providing that the rules regarding rescissions and advance notice apply to all grandfathered health plans).

Fair Labor Standards Act

17. Defendant, Engineering & Inspections Hawaii, failed to pay Mr. Henson wages in accordance with the Fair Labor Standards Act. When Defendant, Engineering & Inspections Hawaii, deducted a health insurance from Mr. Lane's paycheck but failed to use that health insurance premium money for health insurance, this gave rise to a claim for the failure to pay Mr. Henson the wages he earned pursuant to 29 U.S.C. 206(a) and 29 USC § 207(a)(1). Mr. Henson is entitled to damages pursuant to 29 U.S.C. § 216.

Failure to Comply with 29 USC § 1132

18. An employer is obligated to send notice of the right to elect continuation of health insurance benefits within forty four days of the last day of coverage under the group health plan. An employer may delegate this duty to a third party administrator but the employer is not relieved of the obligation to make certain that compliance with the applicable statute is met. Mr. Lane never received a notice of the right to elect continuation of health insurance benefits.

19. An employer or third party administrator is also obligated to send a Summary Plan

       Description within 44 days of the termination date. Mr. Lane did not receive the Summary Plan Description.

20. An employer or third party administrator is also obligated to send a COBRA General Notice within the first 90 days of coverage. Mr. Lane never received a COBRA General Notice describing his rights under COBRA as required.

21. A beneficiary has 60 days to elect to continuing coverage. Mr. Lane never made the election because he was never sent the documents to provide him with an election.

22. A beneficiary then has up to 45 days to make the initial premium payment. Mr. Lane never made the initial premium payment because he was never given the opportunity to elect continuing health insurance benefits.

23. Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company failed to follow the laws set out by the Federal government in administering COBRA insurance.

24. Likewise, Engineering & Inspections Hawaii, failed to follow the law in converting Mr. Lane's health insurance premium payment for its own use rather than paying it the health insurance company. Further, Engineering & Inspections Hawaii failed to comply with the requirements of 45 CFR 147.128.

<u>Civil Enforcement of ERISA Violations</u>

25. Mr. Lane bring suits under 29 USC § 1132(a)(1)(A), (a)(1)(B) and (a)(3)(B). He seeks payment of the medical bills, statutory penalties for the failure to provide COBRA insurance in compliance with the law, penalties and make whole damages for failing to pay the health insurance premiums to the health insurance company,

and reasonable and necessary attorneys fees. Mr. Lane does not seek reinstatement of the health insurance because his current employer provides health insurance. The unpaid medical bills have caused stress and anxiety which disrupts his daily routine. The unpaid medical bills has damages Mr. Lane's credit rating.

## DTPA

26. Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company engaged in false, misleading and deceptive acts and practices that Mr. Lane relied on to his detriment. Specifically, Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company represented that Mr. Lane had health insurance coverage when in fact he did not. The defendants' failure to provide the health insurance as specifically represented was a producing cause of damages to Mr. Lane.

27. In the event the trier of fact determines that Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company denied Mr. Lane health insurance benefits intentionally or knowingly, Mr. Lane seeks recovery for mental anguish damages and punitive damages up to three times the amount of actual damages.

## Breach of Contract

28. Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company failed to provide health insurance coverage as agreed. As a result of the breach of the contract to provide health insurance Mr. Lane suffered damages for which he now sues.

## Negligent Misrepresentation

29. Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company

represented to Mr. Lane that he had health insurance coverage for the October 2 colonscopy when in fact there was no health insurance coverage provided. Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company made that representation without first ascertaining that it was a truthful statement. Mr. Lane relied on that representation in going through with the medical procedure. As a result of the reliance on the negligent misrepresentation, Mr. Lane suffered damages for which he now sues.

### Notice

30. Mr. Lane provided written notice to Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company of him claims on September 26, 2012.

### Damages

31. Mr. Lane seeks recovery for unpaid medical bills incurred in the past, damage to credit rating in the past and future, mental anguish, statutory penalties of $100 a day justified by the mental anguish suffered from the unpaid medical bills, a reasonable fee the necessary attorney's services, court costs and pre-judgment interest from Engineering & Inspections Hawaii, Inc and Highmark Health Insurance Company.

### Prayer

For these reasons, Plaintiff seeks judgment against Defendants as follows:

(1) Actual damages including make whole damages;

(2) Attorneys Fees pursuant to 29 USC § 1132(g), 29 U.S.C 216(a)(b), Texas Civil Practice & Remedies Code § 38.001(8), and Texas Business & Commerce Code 17.50(d);

(3) Punitive damages pursuant to 29 USC §1132(l);

(4) Exemplary damages pursuant to Texas Civil Practice & Remedies Code § 41.003 and Texas Business & Commerce Code §17.50(b)(1);

(5) Costs of Suit; and

(6) All other relief this Court deems just.

Respectfully submitted,

THE GREENWOOD PRATHER LAW FIRM

By: /s/ Kelly G. Prather
Kelly Greenwood Prather
TBA: 00796670
So. Dist. Tx. No. 21829
1300 McGowen Street
Houston, Texas 77004
**Mailing Address:**
**PO Box 1358**
**Houston, Texas 77251**
(713) 333-3200 telephone
(713) 621-1449 telecopier
ATTORNEY FOR PLAINTIFF

### Certificate of Service

I certify that I served Plaintiff's First Amended Complaint on Mark J. Courtois and Alfonso Kennard, by electronic case filing in accordance with Federal Rule of Procedure 5(a)(1)(C) on the 1st day of July, 2013.

/s/ Kelly G. Prather
Kelly Greenwood Prather

Mark J. Courtois                         *Via Electronic Filing*
2777 Allen Parkway, Suite 1000
Houston, Texas 77019
713-526-1801 telephone

10

713-526-2708 facsimile
mjcourtois@ffllp.com
ATTORNEY FOR DEFENDANT
HIGHMARK HEALTH INSURANCE

Alfonso Kennard, Jr. *Via Electronic Filing*
5433 Westheimer
Suite 825
Houston, Texas 77056
713-742-0900 telephone
713-742-0951 facsimile
alfonso.kennard@kennardlaw.com
ATTORNEY FOR DEFENDANT
ENGINEERING & INSPECTION HAWAII

11